**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-cr-0200-RFB-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| WILLIAM DANIEL GEE, | |
| Defendant. | |

## I.    INTRODUCTION

Before the Court is Mr. Gee's Motion to Suppress [ECF No. 24].  The Court held an evidentiary hearing on this Motion.  For the reasons stated below, the Court grants the Motion to Suppress.

## II.    FACTUAL FINDINGS

The Court makes the following factual findings based upon consideration of all of the evidence submitted at the evidentiary hearing in this case.

On June 27, 2019, Officer Jenkins and Officer Nededog of the Las Vegas Metropolitan Police Department were conducting a "spot check" on a residence located at 2509 Conestoga Trial in Las Vegas. They were driving an unmarked police car. They were following up on a possible lead regarding a stolen vehicle being associated with this address. This was <u>not</u> a high crime area known for drug sales or gang-related criminal activity.

When Jenkins and Nededog drove past an intersection near the house, they saw four men leave the residence and start walking toward San Fernando Drive which is the nearest street south of the house. The officers could not see where the men were walking as they were walking toward

San Fernando Drive. The officers did not have a clear view of the men as they walked from the residence to San Fernando Drive. The men then walked from San Fernando Drive toward Jones Boulevard where they turned and headed south. The officers did not have a clear view of the men as they walked towards Jones and then turned southward. After these men had been walking on Jones for a few minutes, the officers activated the police lights on their vehicle to initiate a purported traffic stop of the men. Upon the activation of the lights and the approach of the vehicle, Gee fled from the police car as Jenkins exited the vehicle. After a brief chase, Gee fell down, rolled on the ground several feet and was then restrained by Jenkins. Gee dropped a weapon during his fall. Jenkins placed Gee in handcuffs and stood him up with Nededog watching. Jenkins then conducted a pat down of the outside of Gee's clothing but did not find a weapon. Jenkins then lifted up the front of Gee's clothing and felt inside of the waistband of Gee's pants. Jenkins then felt and pulled out a holster that had been clipped to Gee's belt. The holster was empty. Based upon the empty holster, Jenkins began to search the area where Gee had fallen and then been restrained. Jenkins then found the handgun which is the basis for the charges in this case. Jenkins would not have found the weapon had he not seen the empty holster and swept the area. He conducted a wide search of the area beyond the detention area to find the weapon.

### III.    LEGAL STANDARD

A police officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000)(internal citations omitted). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Id. (internal citations omitted). Whether reasonable suspicion exists depends upon the "totality of the circumstances" surrounding the stop, including "both the content of information possessed by police and its degree of reliability." Alabama v. White, 496 U.S. 325, 330 (1990).

"Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). However, the Ninth Circuit has explained that "the Supreme Court has never endorsed a *per se* rule that flight establishes reasonable suspicion. Instead, the Court has treated flight as just one factor in the reasonable suspicion analysis, if an admittedly significant one." United States v. Brown, 925 F.3d 1150, 1155 (9th Cir. 2019). The Ninth Circuit further recognized in Brown that the Supreme Court "has a long history of recognizing that innocent people may reasonably flee from the police." Id.

Where an officer reasonably believes that "the persons with whom he is dealing may be armed and presently dangerous," the officer may conduct a frisk or "pat-down" search of that person. Terry v. Ohio, 392 U.S. 1, 30 (1968). "For a frisk to be valid, under this exception to the general rule requiring probable cause, the frisk must be both (1) *justified at its inception*, and (2) confined in scope to a *carefully limited search of the outer clothing* in an attempt to discover weapons which might be used to assault an officer." United States v. I.E.V., 705 F.3d 430, 433 (9th Cir. 2012)(internal quotations omitted)(emphasis added).

A person is not "seized" within the meaning of the Fourth Amendment until his "freedom of movement is restrained" by means of "physical force or show of authority." United States v. Smith, 633 F.3d 889, 892 (9th Cir. 2011).

## IV.    DISCUSSION

The Court finds based upon the totality of circumstances that the officers lacked reasonable suspicion to detain Gee when they first sought to detain him, and they continued to lack reasonable suspicion after he was seized and searched.  The government offers three bases for reasonable suspicion of Gee by the officers at the time that he was seized. The Court considers and rejects each in turn.

The Court first finds that Gee was not seized until he was restrained by Jenkins after initially fleeing from officers when they pulled their car up to the walking men and activated the flashing lights on their unmarked police car. Smith, 633 F.3d at 892.

The government first argues that the officers had reasonable suspicion to detain Gee because they observed him commit a traffic violation, i.e. walking in the street in violation of Nevada Revised Statute ("NRS") § 484B.297. However, the Court finds that the government has not presented credible evidence that in fact the officers did observe Gee commit a traffic violation. The Court does not find the evidence including the testimony in this case credibly establishes that the officers actually observed Gee, or his companions commit a traffic violation.

Second, the government argues that officers observed Gee commit a hand-to-hand drug transaction with another one of his companions. The Court finds that the officers did not in fact see Gee or his companions engage in hand movements or any conduct which indicates that a hand-to-hand drug transaction occurred. The Court finds that the government has not credibly established that the officers observed any unusual hand gestures that would be indicative of or suggestive of a hand-to-hand drug transaction or any other illegal activity. This alleged conduct can therefore not serve as a basis for reasonable suspicion.

Third, the government argues that Gee's flight from officers in conjunction with other factors establishes reasonable suspicion. However, Gee's flight alone may not establish reasonable suspicion. Brown, 925 F.3d at 1155. In this case, the Court finds that the government has not established that the officers possessed any facts or observed any conduct that would create reasonable suspicion of criminal activity. The officers did not observe any traffic violations and did not observe any hand movements that would be indicative of criminal activity. The government did not establish through credible evidence that the interaction between Gee and the officers occurred in a high crime area or occurred in conjunction with any suspicious criminal activity. This flight therefore cannot establish reasonable suspicion to detain and search Gee.

Finally, the Court further finds that the weapon in this case must also be suppressed because the officers did not have reasonable suspicion to conduct a pat down of Gee's outer clothing and certainly did not have probable cause to search underneath Gee's clothing and inside of his pants. Upon finally seizing Gee, the officers conducted a pat down search of the outside of his clothing and noticed nothing. Jenkins then lifted up Gee's clothing to search the inside of Gee's waistband where Jenkins discovered an empty gun holster. This holster prompted Jenkins and his partner to

search for a weapon which they found near the area of the seizure. Without this search of the inside of Gee's pants, the officers would not have conducted a search of the surrounding area and would not have discovered the weapon in this case. The officers did not have reasonable suspicion to even conduct a pat down search of Gee. Upon discovering nothing from the pat down, the officers did not have based upon the totality of circumstances a legal basis to search inside of Gee's clothing.

V.    **CONCLUSION**

For the reasons stated,

**IT IS HEREBY ORDERED** that the Motion to Suppress [ECF No. 24] is GRANTED. The weapon found as a result of the detention of Defendant Gee is suppressed.

**DATED:** <u>February 17, 2020</u>.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**